IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>NICHOLAS WAYNE MOORE,<br>DOB: 04/08/1998<br><br><br><br>Defendant. | CRIMINAL CASE NO. CF0313-21<br><br><br><br>**DECISION AND ORDER**<br>*Defendant's Ex Parte Motion for a Mistrial* |

This matter came before the Honorable Arthur R. Barcinas on January 13, 2023, for a hearing on Defendant's *Ex Parte* Motion for a Mistrial. Present at the hearing were: Nicholas Wayne Moore ("Defendant") with Counsel David J. Lujan, William L. Gavras, and Michael F. Phillips, and Assistant Attorney General Sean E. Brown for the People. Having considered the record of proceedings, briefs, arguments, transcripts, and applicable law, the Court hereby **GRANTS** Defendant's *Ex Parte* Motion for a Mistrial and **ORDERS** the Clerk of Court to immediately reassign the case consistent with Administrative Rule No. 20-001.

## BACKGROUND

Trial in this case is proceeding upon an amended superseding indictment on the following charges: (1) Two Counts of Aggravated Assault (As a Second Degree Felony) with Two Counts of the Special Allegation: Deadly Weapon Used in the Commission of a Felony; (2) Terrorizing (As a Third Degree Felony) with the Special Allegation: Deadly Weapon Used in the Commission

of a Felony; and (3) Possession of an Unregistered Firearm (As a Third Degree Felony). Am. Superseding Indictment, June 13, 2022. Jury selection commenced on June 15, 2022, and a petit jury was sworn in on August 11, 2022. Min. Entry, June 15, 2022; Min. Entry, Aug. 11, 2022.

Judge Tolentino has presided over this case since October 19, 2021, including presiding over jury selection and trial. Order Terminating Judge *Pro Tempore* Appointment, Oct. 19, 2021. On November 9, 2022, the Court adjourned until January 10, 2023, to allow the jurors an opportunity to travel over the holidays. Min. Entry, Nov. 9, 2022. During the holiday break, Judge Tolentino developed some medical issues that prevented him from taking the bench on January 10, 2023. As result, Judge Barcinas presided over this case in a care taking and case management role on January 10, 2023. Min. Entry, Jan. 10, 2023. Judge Barcinas did not take any testimony on January 10, 2023; instead, he advised the parties and the jury on Judge Tolentino's situation and attended to some housekeeping. *Id.* This case remains assigned to Judge Tolentino; Judge Barcinas has stepped in to prevent further delay during Judge Tolentino's absence.

On January 9, 2023, Defendant filed Memorandum of Points and Authorities in Support of Defendant's *Ex Parte* Motion for a Mistrial. Mem. of P. & A. In Support of Def.'s Mot. for a Mistrial, Jan. 9, 2023. At the hearing on January 10, 2023, the parties agreed to shorten time on the motion. Min. Entry, Jan 10, 2023. The People filed their opposition. People's Opp'n., Jan 12, 2023. Defendant filed his reply. Def.'s Reply Mem. In Support of Mot. for Mistrial, Jan. 13, 2023. The Court held a motion hearing and took the parties' arguments under advisement. Min. Entry, Jan. 13, 2023.

## DISCUSSION

### I. MISTRIAL IS WARRANTED

Defendant states he "brings this motion after considering the enormous delay and added need to replace Judge Tolentino." Mem. of P. & A. In Support of Def.'s Mot. for a Mistrial at 3. "Both reasons combined provide the Court with compelling reasons and justification to grant a mistrial." *Id.* The People argue that "Defendant asks the Court for a mistrial due to the delay caused by the Defense." People's Opp'n at 1. The People further argue that if Judge Tolentino cannot continue with trial, Judge Barcinas can certify himself under 8 G.C.A. § 90.34 and continue trial. *Id.* at 2.

The trial court has discretion "to decide whether a given incident merits a mistrial." *People v. Aguon*, 2020 Guam 24 ¶ 22 (quoting *United States v. Nace*, 561 F.2d 763, 768 (9th Cir. 1977)). "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez*, 9 Wheat 579, 6 L.Ed. 165. "Under the rule, a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." *Wade v. Hunter*, 336 U.S. 684, 690 (1949) (citing *United States v. Perez*, 9 Wheat 579, 6 L.Ed. 165).

#### a. The delays that have already occurred, the foreseeable future delays, and the length of trial are a manifest necessity for discontinuing trial.

Defendant clarified that Judge Tolentino's absence is not the basis for his motion; rather, the cumulative delay is the basis for the motion and Judge Tolentino's absence is the "straw that broke the camel's back." Digital Recording at 2:30:14–2:35:15. Defendant analogizes this case to *United States v. Lynch*, 598 F.2d 132 (D.C. Cir. 1978). In *Lynch*, the District of Columbia

Circuit Court found that the trial court did not abuse its discretion when it declared a mistrial after the judge presiding over the case became ill and could not finish the trial. *Lynch*, 598 F.2d at 135. The District of Columbia Circuit Court reasoned that delay due to the judge's illness, potential additional delay due to the holidays, and the jury's expected length of trial all supported declaration of a mistrial based on manifest necessity. *Id.* Specifically, the District of Columbia Circuit Court was concerned that the jury was subject to "the risk of outside pressure" and "pressure resulting from a desire to decide the case expeditiously," despite no evidence of either concern. *Id.*

Although not binding authority, the Court recognizes the similarities between this case and *Lynch*. Judge Tolentino's absence has resulted in additional delay to trial and it is still unclear when Judge Tolentino will return to the bench. Pausing trial until Judge Tolentino returns would result in an indeterminate delay. Similarly, while 8 G.C.A. § 90.34 permits Judge Barcinas to preside over trial, the time it would take for Judge Barcinas to familiarize himself with the case and rearrange his calendar would also result in further delay to trial. Nearly two weeks have already passed since Judge Barcinas first updated the jury on Judge Tolentino's situation. Consequently, both alternatives to a mistrial result in further delay, and neither alternative cures the delay that has already occurred.

Like *Lynch*, continuing trial would result in the jury being "at-large" for at least a few weeks—likely even longer. *See id.* (noting the jury was at-large during a two-week delay attributed to the judge's illness). In *Lynch*, the District of Columbia Circuit Court was concerned that "further distraction loomed with the impending holidays." *Id.* The risk of distraction because of the holidays is even greater in this case—the jury just returned from a two-month holiday break. Finally, in *Lynch*, the Court was concerned that the length of trial had exceeded the jury's

expectations. *Id*; *see e.g., Laguerre v. State*, 301 Ga. 122, 125–26 (Ga. 2017) (finding the prolonged length of trial and scheduling conflicts with the jurors' schedules a manifest necessity warranting a mistrial). This concern is particularly applicable to this case. Jury selection began on June 15, 2022, at which time the jury was informed this case would last approximately three weeks. Trial has now gone on for seven months—nearly ten times the expected length of trial. Moreover, despite trial beginning seven months ago, it does not appear that the trial is close to its conclusion. The People have not rested its case, Defendant needs to present his case, and both parties need to present closing arguments. Realistically, it is difficult to estimate the time still required to conclude this trial. When the jury enters deliberations, both the risk of exposure to outside pressure and the likelihood the jury will not be able to recall the evidence and testimony from the beginning of trial will be high.

The People argue that a large part of the delay in trial can be attributed to Defendant. People's Opp'n at 1. The Court has paused trial to accommodate Defendant, as Judge Tolentino discussed in other decision and orders. Albeit the majority of the delay being attributed to Defendant, the Court paused trial for jurors to attend to medical treatment, funerals, and vacations, and for the Pacific Judicial Conference. Yet, the reasons for delay do not change the fact that the jury has not heard testimony in nearly three months and the length of trial has greatly exceeded the jury's expectations. The Court notes that there is no evidence or finding of any outside pressure on any of the jurors. Regardless, the Court does not want to increase the jury's continued risk of outside pressure or media exposure.

The People state "[t]he jury should be questioned about any improper influences or concerns during the past few delays and past few months." People's Opp'n at 3. Although this proposal would remedy any concerns about the jury's exposure to outside pressure, it does not

change the fact that delay has already occurred and there exists foreseeable delay in the future. The jury is presently comprised of thirteen individuals: twelve jurors and one alternate. If the jury loses two more individuals, trial cannot continue. The Court is currently in receipt of two notes—which it has not acted on—from jurors requesting to be excused. The Court has not determined whether it will excuse these jurors. Even so, there is a high likelihood that if not these two jurors, the Court will be required to excused another two jurors prior to the end of trial—especially because Judge Tolentino's absence adds to the length of time it takes to complete trial.

Defendant posits that the juror's requests to be excused—both of which relate to their careers—are "life altering" and "more meaningful than a vacation." Digital Recording (Mot. H'rg. Jan. 13, 2023) at 2:35:15–2:45:21. Defendant argues that denying these requests will negatively affect Defendant. *Id.* "Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, the public's fair interest in fair trials designed to end judgments must prevail over the defendant's value right to have his trial concluded before the first jury impaneled." *Arizona v. Washington*, 434 U.S. 497, 516 (1978). Defendant's speculation is just that—speculation. Still, the Court is mindful that the longer trial continues and the greater number of requests to be excused the Court denies, the more likely it is that the jury could rush deliberations and fail to adequately consider the case. *See State v. Yeboah*, 691 N.W.2d 87, (Minn. Ct. App. 2005) ("It is difficult to imagine a more disgruntled juror than one who has had to forgo a planned vacation under these circumstances. . .such an attitude surely does not inure the benefit of a criminal defendant.).

Defendant asserts that based on the additional length of trial, he "will be compelled to prepare a more significant review of the evidence." Mem. of P. & A. In Support of Def.'s Mot. for a Mistrial at 5–6. Should trial continue, both parties would likely be compelled to conduct a

review of the evidence—opening statements and testimony in this case began on August 13, 2022. Min. Entry, Aug. 13, 2022. The length of trial could negatively impact both parties—not solely Defendant—and the Court is concerned that the jurors will not recall the evidence and testimony from the beginning of trial. The People contend that it is premature to declare a mistrial. Digital Recording (Mot. H'rg. Jan. 13, 2023) at 2:40:15–2:45:21. The Court understands that some of these concerns are speculative. However, continuing trial while Judge Tolentino is absent only causes additional delays and even risk of outside of pressure is a manifest necessity that constitutes a mistrial. *See Lynch*, 598 F.2d at 135 (stating that while there was no evidence or finding of outside pressure, the risk of outside pressure warranted mistrial)

Lastly, Defendant highlights the media coverage of this case and contends that the jury has been exposed to the media coverage of the case. Digital Recording (Mot. H'rg. Jan. 13, 2023) at 2:55:15–3:00:15. The Court reiterates that there is no evidence or finding that the jury has disobeyed the Court's instructions to refrain from talking about the case or viewing any media about the case. Nonetheless, the Court acknowledges that the longer trial continues, the more likely it is that a juror could accidentally overhear a conversation about the case.

**b. Further delay to trial is inconsistent with the ends of justice.**

Defendant states that he has continued to assert his right to speedy trial. Def.'s Reply Mem. In Support of Mot. for Mistrial at 8. As trial has already begun in this case, the speedy trial clock has tolled. 8 G.C.A. § 80.60; *see also People v. Naich*, 2013 Guam 7 ¶ 50. Additionally, Defendant waived his right to speedy trial on June 21, 2022. Assertion or Waiver of Speedy Trial, June 21, 2022. Nonetheless, the Court has a responsibility to expedite this trial. *See* 8 G.C.A. § 80.50(a) (stating judicial officers have a duty to expedite criminal proceedings "to the greatest degree that is consistent with the ends of justice"). The Supreme Court of Guam, in the context

of speedy trial analysis, has found that conduct of the defendant and delay arising from unforeseen circumstances—such as illness—constitutes good cause. *People v. Flores*, 2009 Guam 22 ¶ 32. "Delay attributable to improper Court administration, however, does not constitute good cause." *Id.*

The delay in this trial attributed to Defendant and Judge Tolentino's illness constitute good cause. *See Flores*, 2009 Guam 22 ¶ 32. However, it is less clear whether the jury's holiday break constitutes good cause, as this delay was not an unforeseen circumstance—the jurors submitted travel plans for these vacations during trial and in advance of their trips. Judge Tolentino had the ability to deny these requests but opted to allow the vacations under the belief that trial would resume on January 10, 2023, and there would be no additional break in trial for its remainder. He was unaware that he would not be able to preside over trial on January 10, 2023, until after the holiday break began. Furthermore, as stated earlier, irrespective of whether these delays constitute good cause, they occurred. The Court would be failing to expedite trial if it allowed this trial to continue when the additional delay is foreseeable.

### i. Case reassignment in light of speedy trial.

Title 8 G.C.A. § 80.60(a)(3) states "Except as otherwise provided in Subsection (b), the court shall dismiss a criminal action if. . . [t]he trial of a defendant, who is not in custody at the time of his arraignment, has not commenced within sixty (60) days after his arraignment." "If a defendant is not brought to trial within the time prescribed and no good cause it shown, the trial court must dismiss the indictment." *Flores*, 2009 Guam 22 ¶ 23 (citing 8 G.C.A. § 80.60).

On April 7, 2022, Defendant was arraigned on the Superseding Indictment, and Defendant waived his right to a speedy trial at the arraignment. Min. Entry, Apr. 7, 2022. Defendant filed an assertion of speedy on April 26, 2022. Assertion or Waiver of Speedy Trial, Apr. 26, 2022.

The waiver was filed with the Court on April 26, 2022, which was a Tuesday. *Id.* However, the date on the assertion next to both Defendant's signature and defense counsel's signature is April 22, 2022, which was a Friday. *Id.* The Court finds no record of any hearing held on this case between April 7, 2022, and May 10, 2022. Accordingly, there is no indication that Defendant asserted on the record or informed the Court of his intention to assert prior to April 26, 2022. Accordingly, the Court finds that the assertion date is April 26, 2022, because while Defendant may have intended to assert his right to speedy trial on April 22, 2022, the Court was not put on notice of his assertion until April 26, 2022. At the time of the assertion, Defendant was out of custody and there were sixty days on the speedy trial clock. *See* 8 G.C.A. § 80.60(a)(3). The Court began jury selection on June 15, 2022, but a jury was not empaneled that day. Min. Entry, June 15, 2022. On June 16, 2022, Defendant failed to appear at Jury Selection and the Court issued a bench warrant. Min. Entry, June 16, 2022. The issuance of the bench warrant tolled the speedy trial clock. *See Flores*, 2009 Guam 22 ¶ 32 (stating delay attributed to the defendant does not count in speedy trial calculations). Defendant turned himself in shortly after the Court issued the bench warrant, and was released from confinement that same day, which resumed the speedy trial clock. Release From Confinement, June 16, 2022. On June 17, 2022, Probation filed a fourth violation report after Defendant tested positive for illegal drugs. Fourth Violation Report, June 17, 2022. Defendant remained released from confinement. On June 21, 2022, Defendant filed a waiver of speedy trial and waived his right to speedy trial on the record. Assertion or Waiver of Speedy Trial and Jury Trial, June 21, 2022.

The Court subsequently took a break from jury selection so defense counsel could research and file Defendant's Motion to Suppress Evidence for Violations of the Posse Comitatus Act. Min. Entry, June 21, 2022. On July 13, 2022, Probation filed a fifth violation report when

Defendant failed to comply with his electronic monitoring conditions by making an unauthorized stop. Fifth Violation Report, July 13, 2022. The Court revoked Defendant's pre-trial release as a result of the violation, and he has remained incarcerated since July 13, 2022. Fifth Violation Report, July 13, 2022; Commitment Order, July 13, 2022; Min. Entry, July 18, 2022. There is no record of Defendant reasserting his right to speedy trial following his waiver on June 21, 2022. A jury was empaneled on August 11, 2022. Min. Entry, Aug. 11, 2022. Defendant's right to a speedy trial remained waived from June 21, 2022 to August 11, 2022, and is still waived.

### c. Judge Tolentino's illness is a manifest necessity for discontinuing trial.

A trial can be discontinued "in the discretion of the court if the continuation of the trial is impracticable" due to illness of the judge. *See United States v. Whitlow*, 110 F. Supp. 871, 876 (D.D.C. Cir. 1953); *see also Oelke v. United States* 389 F.2d 668, 671 (9th Cir. 1967) (stating a judge becoming ill is a well-recognized exception to the Double Jeopardy rule); *and Com. v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975) ("we think it clear that illness of the judge preventing continuation of the trial for a period of several weeks at the least constitutes 'manifest necessity' for the declaration of a mistrial.").

The Court finds that the law makes it clear that Judge Tolentino's absence is a manifest necessity that warrants a declaration of mistrial—especially when considering the previous delays and the length of trial. Moreover, when a trial court is considering a discontinuance of trial, it should take "'all circumstances into account' and thereby forbid the application of an abstract formula." *Wade v. Hunter*, 336 U.S. 684, 691 (1949) (citing *United States v.* Perez, 9 Wheat 579, 6 L.Ed. 165). The Court considers the current posture of the case in making its decision. The last time that Judge Tolentino presided over trial, the Court heard arguments regarding witness Brian Mendiola's immunity agreement. Min. Entry, Nov. 9, 2022. Mendiola still needs to either accept

the immunity agreement and waive his Fifth Amendment rights, or assert his Fifth Amendment rights on the record. Accordingly, trial left off at in the middle of an intricate issue. Judge Tolentino is most familiar with events leading up to this issue—as well as all of the issues that have come up in this trial—and it defeat the ends of justice for a new judge takeover mid-trial. The most seasoned judge can review the case and learn the proceedings, but will still be a distinct mind from Judge Tolentino. Given the existing length of trial and the multitude of issues, it is unreasonable for another judge to continue with trial. Likewise, the jury will have to adjust to a new judge presiding over trial after developing a relationship with Judge Tolentino. The Court sees a benefit in the continuity of one judge presiding over the entire trial.

Finally, the People assert "[i]f the Defendant's motion is granted, it would set a precedent for all the defense bar to delay the trial until a mistrial is declared." People's Opp'n. to Def.'s Mot. for a Mistrial at 1. The Court understands the People's concern, but is confident that the series of events that led to the delays and prolonged duration of trial will likely not occur again. It was sudden and unexpected that Judge Tolentino need to take an absence. The Court emphasizes that it considered the alternatives to mistrial, but given the circumstances, determined a mistrial is the best course of action.

## II. DEFENDANT'S CONSENT TO A MISTRIAL PREVENTS DOUBLE JEOPARDY CLAIMS

The Supreme Court of Guam has stated "generally, a mistrial declared on the defendant's motion is not a bar to retrial." *People v. Pablo*, 2016 Guam 29 ¶ 25; *see Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). "There is, however, a narrow exception to the rule that the Double Jeopardy does not bar retrial where the defendant moves for mistrial." *Pablo*, 2016 Guam 29 ¶ 25. "Where a mistrial arose from prosecutorial or judicial actions done 'in order to goad the defendant into

requesting a mistrial,' the general rule does not apply." *Id.* (quoting *United States v. Dintz*, 424 U.S. 600, 611 (1976)).

Defendant explicitly consents to a mistrial. Def.'s Reply Mem. at 4; *see also United States v. Scott*, 437 U.S. 82, 93 (1978) (finding a defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact"). The Court thus begins with the presumption that Defendant's request for a mistrial does not bar retrial. Defendant does not assert that either the People or the Court took action to provoke Defendant into requesting a mistrial. To the contrary, Defendant states it is not about placing blame for the delay, but the point is that the delay occurred. Digital Recording (Mot. H'rg. Jan. 13, 2023) at 2:45:21–2:50:15. The Double Jeopardy Clause "bars retrial where bad-faith conduct by judge or prosecutor threatens the harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant." *United States v. Dintz*, 424 U.S. 600, 611 (1976).

Upon reviewing the record, the Court does not find any bad-faith conduct by the People or the Court that would have provoked Defendant to request a mistrial. As noted, the majority of the delay in this trial is attributed to Defendant. The holiday break and the other breaks for jurors to attend off-island medical appointments and an off-island funeral appear to have been the Court's attempts to ensure the jury remained comprised of twelve individuals while simultaneously ensuring the jurors did not harbor any bias towards the parties for obstructing the jurors' plans. The break for the Pacific Judicial Conference appears to have been based on the Court's desire to allow itself and the parties to continue their legal education. Judge Tolentino's absence is an unforeseeable circumstance beyond the Court's control. The record demonstrates that the People have not once requested a delay in this case, but to the contrary have consistently

opposed requested breaks. Therefore, the Court finds retrial is proper and a new trial will begin as soon as possible.

## CONCLUSION

For the above reasons, the Court hereby **GRANTS** Defendant's *Ex Parte* Motion for a Mistrial and **ORDERS** the Clerk of Court to immediately reassign the case consistent with Administrative Rule No. 20-001.

JAN 2 3 2023

**IT IS SO ORDERED** _____.



**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**